Steven John Moser (SM1133)
Steven J. Moser, P.C.
3 School Street, Suite 207B
Glen Cove, New York  11542
(516) 671-1150 • F (516) 882-5420
*Attorney for Plaintiff*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

Case No.: 14-CV-4729 (JFB)(AKT)

AIDA LICO, individually and on behalf of all others similarly situated,

Plaintiff,

-*against*-

**FIRST AMENDED COMPLAINT**

**JURY TRIAL DEMANDED**

TD Bank US Holding Company d/b/a TD Bank, N.A., Richard Catalano, Robert Bullock and Cassandra Bardoo,

Defendants.

Plaintiff Aida Lico, by her attorney, STEVEN J. MOSER, P.C., hereby files this complaint against TD Bank US Holding Company d/b/a TD Bank, N.A., Richard Catalano, Robert Bullock and Cassandra Bardoo.

INTRODUCTION

1.      The defendant, TD Bank US Holding Company d/b/a TD Bank, N.A. ("Bank" or "TD Bank"), is a national association with a branch in East Meadow, New York.  The Defendant Bank has not implemented breastfeeding and lactation policies which conform to The Patient Protection and Affordable Care Act amendments to the Fair Labor Standards Act, 29 U.S.C. §201 et seq.( "the FLSA Nursing Mothers Amendment").  In fact, the Bank has a nationwide policy that does not comply with the FLSA's requirements found in 29 U.S.C. §207(r).

2.      The legislative intent behind 29 U.S.C. §207(r), as expressed in the Introduction of the Breastfeeding Promotion Act to  the U.S. House of Representatives in 2009, is to protect the public health of infants and nursing mothers, in consideration of the fact that 50% of mothers with children under one year are employed.

> The American Academy of Pediatrics recommends that mothers breastfeed exclusively for six months but continuing for at least the first year of a child's life. Research studies show that children who are not breastfed have higher rates of mortality, meningitis, some types of cancers, asthma and respiratory illnesses, bacterial and viral infections, diarrhoeal diseases, ear infections, allergies, and obesity.  There have also been numerous benefits to mothers shown, including improved bone mineralization, an earlier return to pre-pregnancy weight, and decreased risk of certain cancers.  H.R. 2819, 111th Cong. (1st Sess. 2009).

3.      The Department [of Labor] has consulted with public health officials, including the Centers for Disease Control and Prevention ("CDC") and the Department of Health and Human Services "(DHHS")  to "better understand a nursing mother's physiological needs and inform [its] initial determinations regarding the frequency and timing of breaks to express breast milk."  In part, the frequency of nursing is based on the baby's individual needs and age, with as many as 8 to 12 feedings per day in the baby's early months of life.  Reasonable Break Time For Nursing Mothers, 75 Fed. Reg. at 80075.

4.      A nursing mother produces milk constantly, and if the working mother is separated from her baby, the mother must express milk "as frequently as the baby usually nurses."  If she is unable to do so, she may experience a drop in milk supply, resulting in her inability to nurse her child, and an infection.  *Id.*

5.      Plaintiff Aida Lico ("Aida") was an employee at the East Meadow Branch of TD Bank (the Branch).  She gave birth to a daughter, Giuliana, on December 9, 2011.  Upon her return to work on March 27, 2012, she was deprived of her rights as a nursing mother to express breast milk as needed for her infant child, Giuliana.

- 2 -

6.      Both by corporate policy and in practice, the Defendants denied Aida reasonable break times to express milk for her nursing child each time she conveyed her need to express milk.    The Defendants' written policy  only permitted the use of meal time *or* break time to express milk, not as needed by the nursing mother.   In practice, the Defendants frequently did not permit Aida to leave her work station or break from her duties when she had the physiological need to express her breast milk.    Instead, she was forced to wait for hours to do so, sometimes as long as five or six hours.   As a result of the Defendants' policies and practices, Aida suffered shame and humiliation when her breast milk leaked out onto her clothing in front of customers and co-workers.   She would keep a sweater at work to wear over her clothing specifically for the purpose of preventing further humiliation.   As a result of the inability to express milk "as needed" Aida suffered a reduction in milk supply, chills, fevers, physical pain, infection and discoloration of her breast (known as "black breast").  Her ability to provide for the nutritional needs of her daughter was put at risk.  When Aida's objections to and complaints to the conditions she was subjected to were ignored, she was forced to feed Giuliana at home during her lunch hour or immediately before or after work, thus affecting her attendance.    The Bank, despite not complying with the law regarding accommodations to be given to breastfeeding mothers, retaliated against Aida for taking time at home to care for her daughter by accusing her of having "attendance issues."   Finally, the Bank finally retaliated against Aida for exercising her right to express milk by firing her less than two months after she returned from maternity leave.

7.      By this Complaint, the Plaintiff seeks redress for violations of the Fair Labor Standards Act, 29 U.S.C. §201 *et seq.* (the "FLSA") as amended by The Patient Protection and

Affordable Care Act (the "Act"), the New York Human Rights Law and New York common law.

8.     The Plaintiff will be asking this Court to settle questions of law in favor of the rights of nursing mothers and nursing infants under 29 U.S.C. 207(r).

9.     By this Complaint, the Plaintiff asserts the following causes of action against the Defendants:

> (a)  A *First Cause of Action* against the Bank's nation-wide  policy of unlawfully restricting  reasonable break time to employee mothers each time they needed to express breast milk for her nursing child  in violation of 29 U.S.C. §207(r)(1)(A);
>
> (b)  A *Second Cause of Action* against the Bank's nation-wide policy of failing to provide a place, other than a bathroom, that was shielded from view and free from intrusion from coworkers and the public, which could be used by nursing mothers to express breast milk under 29 U.S.C. §207(r)(1)(B).
>
> (c)  A *Third Cause of Action* for the unlawful practice of refusing to provide reasonable break time to the employee mother each time she needed to express breast milk for her nursing child  in violation of 29 U.S.C. §207(r)(1)(A);
>
> (d)  A *Fourth Cause of Action* for unlawful retaliation in violation of 29 U.S.C. §207(r) under 29 U.S.C. §215(a)(3); and
>
> (e)  A *Fifth Cause of Action* for unlawful retaliation in violation of 29 U.S.C. §207(r) under 29 U.S.C. §218c.

(f)   A *Sixth Cause of Action* for unlawful discrimination because of sex in violation of NYHRL §296(1)(a).

(g)   A *Seventh Cause of Action* for unlawful discrimination because of sex in violation of NYHRL §296(1)(a).

## COLLECTIVE ACTION ALLEGATIONS

10.     Plaintiff's First, Second and Third Causes of Action are brought by the Plaintiff on behalf of herself and similarly situated Breastfeeding Mothers who have been employed by the Bank at any time during the three year period prior to the filing of this Complaint who elect to opt-in to this action (the "FLSA Collective").

11.     The FLSA Collective members have been victims of Defendants' policy and practice of only allowing a nursing mother "to use meal time or break time each day to express milk for her nursing child" instead of "each time such employee has need to express the milk" for one year after the child's birth as required by 29 U.S.C. §207(r).

12.     The FLSA Collective members have been victims of Defendants' policy and practice of refusing to provide "a place, other than a bathroom, that is shielded from view and free from intrusion from coworkers and the public, which may be used by an employee to express breast milk," as required by 29 U.S.C. §207(r), and instead only "mak[ing] reasonable efforts to provide a room or other location…other than a bathroom *stall,* where an Employee can express milk…" Under the Bank's policy, it may order women to use unsanitary bathrooms to express milk. As part of their regular business practice, Defendants have intentionally, willfully, and repeatedly harmed Plaintiff and the FLSA Collective by engaging in a policy of violating the FLSA.   This policy includes, but is not limited to, the Bank's nationwide policy of non-compliance with 29 U.S.C. §207(r).

- 5 -

13.     The FLSA Collective would benefit from the issuance of a court-supervised notice of the present lawsuit and the opportunity to join the present lawsuit.   Those similarly situated employees are known to the Defendants, are readily identifiable, and locatable through Defendants' records.  These similarly situated employees should be notified of and allowed to opt into this action, pursuant to 29 U.S.C. § 216(b).

JURISDICTION AND VENUE

14.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1331, and supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

15.     In addition, the Court has jurisdiction over Plaintiffs' claims under the FLSA pursuant to 29 U.S.C. § 216(b).

16.     Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. § 1391.  A substantial part of the events or omissions giving rise to claims in Complaint occurred within the Eastern District.

PARTIES

17.     Plaintiff Aida Lico ("Aida") is a natural person who resides in Nassau County, New York.

18.     Defendant TD Bank is a national association with corporate offices located at 2 Portland Square, Portland, Maine 04112-9540 and 2035 Limestone Road, Wilmington, Delaware, 19808.

19.     Defendant Bank operates a branch at 2549 Hempstead Turnpike, Hempstead, NY, 11554 (the "Branch"), where Aida worked for more than 3 years.

20.     Defendant Cassandra Bardoo ("Bardoo") is a natural person whose place of residence is unknown.

21.     Defendant Bardoo at all relevant times was the Sales and Service Manager of the Bank's East Meadow Branch.

22.     Defendant Robert Bullock ("Bullock") is a natural person whose place of residence is unknown.

23.     Defendant Bullock at all relevant times was the Manager of the Bank's East Meadow Branch.

24.     Defendant Richard Catalano ("Catalano") is a natural person whose place of residence is unknown.

25.     Defendant Richard Catalano at all relevant times was the Bank's Human Resources Partner.

26.     At all relevant times, Defendant Bank had the power to hire and fire the Plaintiff, supervise and control the Plaintiff's work schedules and conditions of employment, determine the rate and method of payment to the Plaintiff, and maintain the employment records of the Plaintiff.

27.     At all relevant times, Defendant Bardoo had supervisory control of Aida.

28.     At all relevant time, Defendant Bardoo acted on behalf of the Defendant Bank.

29.     At all relevant times, Defendant Bullock had supervisory control of Aida.

30.     At all relevant time, Defendant Bullock acted on behalf of the Defendant Bank.

31.     At all relevant times, Defendant Catalano had supervisory control of Aida.

32.     At all relevant time, Defendant Catalano acted on behalf of the Defendant Bank.

LAW

33.     The Plaintiff will be asking this Court to settle important questions of Law with

regard to a breastfeeding mother's right to express milk and her newborn child's health and

nourishment.

34.     The Patient Protection and Affordable Care Act, PL 111-148, March 23, 2010,

124 Stat 119 (the Act) made important changes to the FLSA.

35.     One of these changes was that employers must provide, as of the effective date of

the Act:

> (A) a reasonable break time for an employee to express breast milk for her nursing
> child for 1 year after the child's birth *each time such employee has need to
> express the milk*; and
>
> (B) a place, *other than a bathroom*, that is shielded from view and free from
> intrusion from coworkers and the public, which may be used by an employee
> to express breast milk.

29 U.S.C. 207(r) [Emphasis supplied].

36.     Another important amendment included further anti-retaliation protections:

> No employer shall discharge or in any manner discriminate against any employee
> with respect to his or her compensation, terms, conditions, or other privileges of
> employment because the employee[] has…objected to, or refused to participate in,
> any activity, policy, practice, or assigned task that the employee [] reasonably
> believed to be in violation of any provision of this title...

29 U.S.C.A. § 218c(a)(5).

37.     Section 215 of the FLSA has historically been considered the anti-retaliation

provision of the FLSA.   However, there has been little uniformity in courts' views and

interpretations of the Act's amendment to the anti-retaliation provisions of the FLSA.   Some

Courts have announced that Section 218c of the FLSA *is* the operative anti-retaliation provision

of the FLSA.   *See e.g. Wiley v. Asplundh Tree Expert Co.*, 2:13-CV-02952, 2014 WL 1017208

(S.D.W. Va. Mar. 17, 2014)(stating that 218c "prohibits retaliation by an employer against an

employee who has assisted or participated in a proceeding concerning a violation of the FLSA"); *Jean-Louis v. Metro. Cable Commc'ns, Inc.*, 838 F. Supp. 2d 111, 120 n. 5 (S.D.N.Y. 2011)(referring to 218c as "[t]he anti-retaliation provision of the FLSA." In a well-reasoned decision, Judge Wake of the District of Arizona concluded that "this title," as stated in 29 U.S.C. §218, refers to Title I of the Affordable Care Act, not Title 29 of the U.S. Code. *Rosenfield v. GlobalTranz Enterprises, Inc.*, CV 11-02327-PHX-NVW, 2012 WL 2572984 (D. Ariz. July 2, 2012). The logic of the decision is compelling. Congress could not have meant by enacting 218c to implement redundant anti-retaliation provisions under the FLSA and at the same time leave comprehensive healthcare reform *without* an anti-retaliation provision. *Id.*

38. Considering the reasoning of the *Rosenfield* decision, the question becomes "Which anti-retaliation provision applies to the Affordable Care Act amendments to the FLSA?" A District of Colorado court has suggested that the correct anti-retaliation provision applicable to a breastfeeding mother's request for accommodations *is* 29 U.S.C. § 218c. *Falk v. City of Glendale*, No. 12-CV-00925-JLK, 2012 WL 2390556 n. 11 (D. Colo. June 25, 2012)(If Plaintiff's complaints regarding failure to accommodate her requests for breastfeeding time rests "not on discrimination, but on workplace conditions, then she must consider whether an FLSA retaliation claim [under 218c] provides an appropriate remedy). A Northern District of Iowa Court, addressing the same issue, stated that not 218c, but 215, protects a nursing mother from retaliation for complaints for violations of 207(r). *Salz v. Casey's Mktg. Co.*, 11-CV-3055-DEO, 2012 WL 2952998 (N.D. Iowa July 19, 2012).

39. The Plaintiff will therefore be asking this Court to address the important question of whether a complaint made for alleged violations of the Affordable Care Act's amendments to the FLSA is protected by 29 U.S.C. §215, or 29 U.S.C. §218c, *or both.*

40.    The second and further-reaching question of law which will affect the rights of all breastfeeding mothers at work and the well-being of their newborn children is whether 29 U.S.C. §207(r) gives a mother a private right of action where an employer, as in the case here, refuses to comply with the Nursing Mothers Amendment to the FLSA.

41.    Recently, a private cause of action for violations of the breastfeeding mother provisions of the FLSA not only went to trial before a jury, but was *appealed and considered on its merits* by the 11th Circuit. *Miller v. Roche Rus. And Cas. Co. Inc.,* 502 Fed.Appx. 891(11th Cir. 2012). Other courts have suggested that 207(r) gives rise to a private cause of action. *See e.g. Falk v. City of Glendale*, No. 12-CV-00925-JLK, 2012 WL 2390556 n. 8 (D. Colo. June 25, 2012). Yet, two courts have interpreted the law to grant a right without a remedy. *Salz v. Casey's Mktg. Co.,* 11-CV-3055-DEO, 2012 WL 2952998 (N.D. Iowa July 19, 2012)( (Donald E. O'Brien, J.) (Observing that "there does not appear to be a manner of enforcing the express breast milk provisions"); *See also E.E.O.C. v. Vamco Sheet Metals, Inc.*, 13 CIV. 6088 JPO, 2014 WL 2619812 (S.D.N.Y. June 5, 2014)(James Paul Oetken)(Citing *Salz* for the proposition that "there does not appear to be a manner of enforcing the express breast milk provisions").

42.    Whether a private right of action exists is ultimately a matter of legislative intent *Transamerica Mortgage Advisors, Inc. (TAMA) v. Lewis*, 444 U.S. 11, 15, 100 S. Ct. 242, 245, 62 L. Ed. 2d 146 (1979). Without question Congress *intended* for violations of 29 U.S.C. §207 to give rise to a private cause of action. *See* 29 U.S.C. §216(b). However, the *Salz* court opined that only the Secretary of Labor would be authorized to enforce 207(r) because 216(b) does not give a nursing mother a *remedy* for violation of 207(r) because it allows for a plaintiff to recover only minimum wages or overtime. *Id.*

43.     This limited reading of the statute conflicts with the principle that attorneys who represent private litigants serve an important role in enforcing the provisions of the FLSA as "private attorneys general"  *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 477 (S.D.N.Y. 2013); *Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 623 (S.D.N.Y. 2012).

44.     And 216(c) gives *no more authority to the Secretary than it does to a private plaintiff* – only allowing the Secretary to recover unpaid minimum wages or overtime compensation.   Of course, the Department of Labor may enjoin an employer from illegal conduct under Section 211, but the exercise of the Secretary's authority is completely discretionary.  *Powell v. Washington Post Co.*, 267 F.2d 651, 652 (D.C. Cir. 1959).

45.     The ultimate conclusion would be that, based upon the opinions in e *Salz* and *Vamco, there is no manner of enforcing a mother's right to express milk or her infant child's right for her mother's nourishment.*

46.     However, as Chief Justice Marshall observed:

> The very essence of civil liberty certainly consists in the right of every individual to claim the protection of the laws, whenever he receives an injury.  One of the first duties of government is to afford that protection…   [I]t is a general and indisputable rule, that where there is a legal right, there is also a legal remedy by suit or action at law, whenever that right is invaded.
>
> The government of the United States has been emphatically termed a government of laws, and not of men. It will certainly cease to deserve this high appellation, if the laws furnish no remedy for the violation of a vested legal right.

*Marbury v. Madison,* 5 U.S. 137, 163, 2 L. Ed. 60 (1803)

47.     The FLSA is a remedial statute.  *Young v. Cooper Cameron Corp.*, 586 F.3d 201, 204 (2d Cir. 2009); *Bongat v. Fairview Nursing Care Ctr., Inc.*, 341 F. Supp. 2d 181, 184 (E.D.N.Y. 2004).   And "the remedial nature of the statute further warrants an expansive interpretation of its provisions so that they will have the widest possible impact..."  *Herman v. RSR Sec. Servs. Ltd*., 172 F.3d 132, 139 (2d Cir. 1999)(internal quotation and citation omitted).

Thus, for example, "although one might read the Act, by deliberate omission" to not authorize notice, § 216 has been read "as permitting, rather than prohibiting, notice in an appropriate case" because "this holding comports with the broad remedial purpose of the Act, which should be given a liberal construction."  *Braunstein v. E. Photographic Labs., Inc.*, 600 F.2d 335, 336 (2d Cir. 1978).  This expansive view is consistent with granting a remedy under the FLSA, especially when considering so fundamental a that of a mother's to breast feed, and her infant's health.

48.     For these reasons, and others which may be briefed to the Court during the course of this litigation, the Plaintiff seeks this Court's assistance on behalf of all nursing mothers who work and their infant children to not leave them without a remedy.

## STATEMENT OF FACTS

49.     Aida was employed by the Defendant Bank at its East Meadow branch from September 15, 2008 until May 23, 2012.

50.     Aida began working for the Defendant Bank as a Teller on September 15, 2008. Due to her exceptional performance, she was later promoted to Customer Service Representative.

51.     Aida had a good attendance record from September 15, 2008 through December 2, 2011, when she took leave to give birth to her child.

52.     Aida worked almost until she gave birth, so as to maximize her time with her new baby.

53.     Aida gave birth to Giuliana on December 9, 2011.

54.     Before March 1, 2012, the Bank had no written policy regarding breastfeeding and lactation in its employee handbook entitled "Equal Employment Opportunity Policy Statement and Detailed Harassment and Discrimination Free Work Environment Policy."

- 12 -

55.     On March 1, 2012, the employee handbook was revised to include a section on Breast Feeding and Lactation.   The policy provided, in relevant part:

> Breast-Feeding and Lactation
>
> In accordance with applicable state laws, TD Bank will permit an employee who is a nursing mother to use *meal time* or *break time* each day to express milk for her nursing child.    In addition, the company shall make *reasonable efforts* to provide a room or other location…*other than a bathroom stall*, where an employee can express milk in privacy. [Emphasis added].

56.     The policy does not implement nor reflect the Patient Protection and Affordable Care Act amendments to the Fair Labor Standards Act, 29 U.S.C. §201 *et seq.*("FLSA").

57.     The employee handbook, as of March 1, 2012, did not contain the broad protections for any employee who "objected to, or refused to participate in, any activity, policy, practice, or assigned task that the employee…reasonably believed to be in violation" of the policy found in 29 U.S.C. 207(r).   Instead, the policy stated that "[t]here will be no adverse personnel actions taken against employees who exercise, or attempt to exercise, their rights under this policy."

58.     Aida was granted maternity leave by the Defendant until March 28, 2012, when she returned to work.

59.     Upon her return to work, Aida informed Defendant Bardoo, the Branch's new Assistant Manager, that she needed to use a pump to express breast milk for her infant Giuliana and Aida asked Bardoo about any related bank rules.

60.     Bardoo and Bullock enquired with the Bank as to the Bank's policy regarding nursing mothers.

61.     Bardoo and Bullock were advised by Defendant Catalano, of the bank's policy, set forth in paragraphs 36 and 27 herein, a copy of which is annexed to this complaint as Exhibit 1.

- 13 -

62.     Defendant Bardoo told Aida that her weekday schedule of Monday through Friday, 8:30 a.m. to 5:30 p.m. would soon be changed to working on weekends and working until 8:30 p.m. at night on Thursdays and Fridays.

63.     Aida objected to Bardoo about the schedule change, due to the physical needs of her infant and her need to express milk on a regular schedule, but Bardoo refused Aida's request not to work weekends and evenings.

64.     Aida then complained about the schedule change to Defendant Bullock, who also refused Aida's request not to work the changed schedule and informed Aida that if she wanted to keep her job, she could not request other hours.

65.     Bardoo informed Aida approximately one week after Aida returned from Maternity Leave that consistent with the Bank's policy, only two breaks were allowed to express breast milk.

66.     Consistent with the Bank's policy, Bardoo ordered Aida to use the bathroom to express milk.

67.     Aida objected to Defendant Bardoo to expressing milk in the bathroom as it was unsanitary.

68.     Defendant Bardoo then ordered Aida, consistent with Bank policy, to use the "mailroom" to express milk.   The mailroom had no lock on its door.   This forced her to stand with her back to the door, or to sit on a small stool propped up against the door, to prevent intrusion and protect her privacy.

69.     After Aida objected to the mailroom location as not protecting her privacy, she was ordered to use the safe-deposit room to express milk

70.     Both the mailroom and safe-deposit room were unsanitary locations not close to a sink.

71.     When Aida used the safe-deposit room, the Bank would of course prohibit access to the room.  Also, there was only one safe deposit room available for customers.  If Aida was expressing milk in the safe deposit room and customers wanted access to their safe-deposit box, they would not simply be told that the safe-deposit room was unavailable.   Instead, the customers would be advised that the room was unavailable because Aida was expressing milk. Aida, while trying to express breast milk for Giuliana, would overhear the customer complaints and conversations between bank personnel and the customers.

72.     Almost every time Aida asked Bardoo for a break to express breast milk, Bardoo refused.

73.     Almost every time Aida asked for a break, Bardoo instead gave Aida work assignments such as serving additional customers or copying or faxing papers for Bardoo.

74.     As a result of Defendant's actions and policy, Aida was rarely permitted to take a nursing break in the afternoons.

75.     As a result of Defendant's actions, Aida was many times permitted only to take a nursing break once per day (in addition to her lunch period).

76.     As a result of Defendant's actions, at least two times a week, Aida was forced to wait as long as five or six hours to express milk.

77.     Because of Defendant's repeated delays or denials of Aida's requests to express breast milk, Aida suffered painful breast engorgement.

78.     Because of Defendant's delays or denials of Aida's requests to express breast milk, Aida's breast milk leaked out onto her clothing in front of customers and co-workers many times, causing Aida humiliation and severe emotional distress.

79.     Because of Defendant's delays or denials of her requests to express breast milk, Aida suffered from "black breast" with its accompanying physical pain resulting from clogging of the milk ducts, and a reduced milk supply.

80.     Others who were not nursing women were permitted to take breaks at will.   Other employees were permitted to take breaks for trivial needs such as cigarette smoking, and for coffee.

81.     Other employees at the branch who were not nursing women were permitted to take normal bathroom breaks to attend to their biological needs.

82.     On one occasion, Bardoo questioned Aida during a conversation about why she was "still pumping breast milk" and told Aida to "just give your child formula."   When Aida objected, replying that the reason was better nutrition for her baby, Defendant Bardoo rolled her eyes and said, "I guess in your country or your religion that's what is required."

83.      As a result of the physical pain, the extreme humiliation, the lack of privacy and sanitary conditions, and the emotional distress Aida was suffering as a result of the Defendant's practices, Aida was forced to nurse her baby at home, either right before work, or by traveling from and to work to take lunch at home, or by leaving work early on some days, rather than suffer more pain and anguish.

84.     Due to her need to nurse at home, caused by the Defendant Bank's own policies, on some days Aida arrived late at work, but she followed the customary practice of other branch employees, calling in to notify her supervisor, and staying late to make up the time.

85.     On some days Aida had to leave work temporarily to attend to her biological need to express milk, but she did so always with the permission of her supervisor.

86.     On some days, because her baby was ill, Aida followed the Bank's approved procedure of calling in ahead of time to notify her supervisor, Defendant Bardoo.

87.     However, when she later brought in a doctor's note for her baby's illness, Defendant Bardoo refused to accept the note, and instead threatened Aida with the loss of her job.

88.     Defendants effectively forced Aida to express breast milk away from work to avoid suffering further pain, anguish, and humiliation.  Because of the Bank's policy of refusing to comply with the FLSA, the Bank caused Aida to miss work on occasions.

89.     On or about April 26, 2012, Defendant Bank placed Aida on a non-probationary Corrective Action Plan ("CAP") for purported "attendance issues," with a 60 day time frame (June 26, 2012) for improvement, but the Defendant's practice of refusing Aida's nursing breaks continued.

90.     On May 11, 2012, Defendant again placed Aida on a probationary 90-day CAP, but again the Defendant's practice of delays and denials for Aida's nursing breaks continued.

91.     On May 23, 2012, Defendant terminated Aida for purported "attendance issues."

<u>FIRST CAUSE OF ACTION</u>

Violations of Statutory Protection for Break Time for Nursing Mothers

Under Fair Labor Standards Act, 29 U.S.C. §207(r)

*Against TD Bank*

92.     Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

93.     Defendant Bank was an employer engaged in commerce and/or the production of goods for commerce within the meaning of 29 U.S.C. § 207(a).

94.     Defendant Bank's employees handled, sold and otherwise worked on goods or materials that have been moved in or produced for commerce by any person, and Defendant has at least $500,000 of annual gross volume of sales made.

95.     At all times relevant, Plaintiff was an employee within the meaning of 29 U.S.C. §§ 203(e) and 207(a).

96.     The Defendant Bank employed the Plaintiff as an employer.

97.     Defendant, pursuant to a written policy, refused to provide Plaintiff and similarly situated nursing mothers reasonable break time to express breast milk each time they needed as they were entitled to under 29 U.S.C. §207(r).

98.     Defendants' violations of the FLSA have been willful, in that the Bank knew or should have known that its policy, as described herein, violated the FLSA.

99.     Because Defendants' violations of the FLSA were willful, a three-year statute of limitations applies pursuant to 29 U.S.C. § 255.

100.    As a result of Defendant's violations of the FLSA, Plaintiff has suffered damages in amounts to be determined at trial, and is entitled to recovery of nominal damages, liquidated/punitive damages, attorneys' fees, costs, and compensatory damages pursuant to 29 U.S.C. §§ 201 et seq.

## SECOND CAUSE OF ACTION

Violations of Obligation to Provide Suitable Place for a Nursing Mother to Express Milk under Fair Labor Standards Act, 29 U.S.C. §207(r)

*Against TD Bank*

101.    Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

102.    The Defendant Bank, pursuant to a common written policy, refused to provide Plaintiff and others similarly situated a place, other than a bathroom, that was shielded from view and free from intrusion from coworkers and the public, which could be used to express breast milk under 29 U.S.C. §207(r)(1)(B).

103.    Defendant's violations of the FLSA have been willful, in that they knew or should have known that its actions, as described herein, violated the FLSA.

104.    Because Defendants' violations of the FLSA were willful, a three-year statute of limitations applies pursuant to 29 U.S.C. § 255.

<u>THIRD CAUSE OF ACTION</u>

Violations of Statutory Protection for Break Time for Nursing Mothers

Under Fair Labor Standards Act, 29 U.S.C. §207(r)

*Against TD Bank*

105.    Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

106.    Defendant's had a practice of prohibiting the Plaintiff and similarly situated nursing mothers from using reasonable break time to express breast milk each time they needed as they were entitled to under 29 U.S.C. §207(r).

107.    Defendants' violations of the FLSA have been willful, in that the Bank knew or should have known that its actions, as described herein, violated the FLSA.

108.    Because Defendants' violations of the FLSA were willful, a three-year statute of limitations applies pursuant to 29 U.S.C. § 255.

109.    As a result of Defendant's violations of the FLSA, Plaintiff has suffered damages in amounts to be determined at trial, and is entitled to recovery of nominal damages, liquidated/punitive damages, attorneys' fees, costs, and compensatory damages pursuant to 29 U.S.C. §§ 201 et seq.

110.    As a result of Defendant's violations of the FLSA, Plaintiff has suffered damages in amounts to be determined at trial, and is entitled to recovery of nominal damages, liquidated /punitive damages, attorneys' fees, costs, and compensatory damages pursuant to 29 U.S.C. §§ 201 et seq.

<u>FOURTH CAUSE OF ACTION</u>

Unlawful Retaliation by Discharge or Discrimination

Fair Labor Standards Act, 29 U.S.C. §207(r) and 29 U.S.C. 215(a)(3)

*Against All Defendants*

111.    Plaintiff repeats and realleges each and every allegation previously set forth herein.

112.    Plaintiff attempted to assert her right to express milk as needed under 29 U.S.C. §207(r).

113.    Plaintiff made complaints related to violations of 29 U.S.C. §207(r).

114.    Plaintiff engaged in protected activity under 29 U.S.C. §215.

115.    Defendants retaliated against the plaintiff by their conduct towards her as detailed in this complaint.

116.    Defendants retaliated against the Plaintiff by firing her.

117.    The treatment of the plaintiff and her termination constituted retaliatory actions in violation of 29 U.S.C. §215.

118. The FLSA, 29 U.S.C. 216(b) provides that an employee who has been retaliated against in violation of 29 U.S.C. 215(a)(3) shall be entitled to "legal or equitable relief as may be appropriate to effectuate the purposes" of that section, including, but not limited to liquidated damages, reinstatement, promotion, the payment of wages lost and an additional equal amount as liquidated damages, attorney's fees and costs.

## FIFTH CAUSE OF ACTION

Unlawful Retaliation by Discharge or Discrimination

FLSA, 29 U.S.C. §207(r) and 29 U.S.C. §218c(a)(5)

*Against All Defendants*

119. Plaintiff repeats and realleges each and every allegation previously set forth herein.

120. Plaintiff objected to assignments and refused to express milk in the bathroom and the mailroom.

121. Plaintiff attempted to asserted her right to express milk as needed under 29 U.S.C. 207(r).

122. The Plaintiff's activities were protected under 29 U.S.C. 218c(a)(5).

123. Defendants retaliated against the plaintiff by their conduct towards her as detailed in this complaint.

124. Defendants retaliated against the Plaintiff by firing her.

125. The treatment of the plaintiff and her termination constituted retaliatory actions in violation of 29 U.S.C. §218c(a)(5).

## SIXTH CAUSE OF ACTION

Discrimination by Termination in Violation of NYHRL § 296(1)(a)

*Against All Defendants*

126.    New York State Executive Law §296(a) makes it unlawful "[f]or an employer or licensing agency, because of an individual's age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, marital status, or domestic violence victim status, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

127.    The act of breastfeeding and being a nursing mother is inseparable from being female.

128.    The Plaintiff was a nursing mother.

129.    The Plaintiff was qualified to perform her duties.

130.    The Plaintiff was terminated from employment because she was a nursing mother.

131.    The Plaintiff's termination occurred under circumstances giving rise to an inference of discrimination.

132.    The Plaintiff is entitled to emotional anguish and lost wages as a result of the Defendants' unlawful termination.

<u>SEVENTH CAUSE OF ACTION</u>

Discrimination in terms, conditions and privileges of Employment in Violation of NYHRL 296

*Against All Defendants*

133.    The Plaintiff was a nursing mother.

134.    The Plaintiff was restricted from taking breaks to express milk, a biological function that is inseparable from her gender.

135.    The Plaintiff's coworkers were allowed to take breaks to attend to non-female biological functions such as using the bathroom.

136.    The Plaintiff's coworkers were allowed to take breaks for reasons such as cigarette breaks and coffee breaks.

137.    As a result of the aforementioned discrimination, the Plaintiff was caused to suffer severe humiliation, mental anguish, distress, and physical pain as detailed in this complaint.

138.    The Plaintiff is entitled to compensatory damages including her physical pain, humiliation, and mental anguish as detailed in this complaint.

CLAIM FOR RELIEF

WHEREFORE, Plaintiff prays for the following relief:

   a.   Nominal damages;

   b.   Punitive/Liquidated damages;

   c.   Reinstatement;

   d.   The payment of lost wages (back and front pay) and an additional equal amount as liquidated damages;

   e.   Compensatory damages for Physical pain, Emotional Anguish and Humiliation;

   f.   Appropriate equitable and injunctive relief to remedy Defendant' violations, including but not necessarily limited to an order declaring that Defendants' employment policies with regard to nursing mothers violate the FLSA, and an order enjoining Defendant from continuing their unlawful practices;

   g.   Pre-Judgment and Post-Judgment interest, as provided by law;

   h.   Attorney's fees and costs;

    i.   Such other injunctive and equitable relief as the Court may deem just and proper.

JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues of fact and damages stated herein.

Dated:  Glen Cove, New York
           August 19, 2014

                    Respectfully Submitted,
                          MOSER, P.C.

                    07B
                Glen Cove,      11542
                (516) 671-1150 ● F (516) 882-5420
                smoser@moseremploymentlaw.com