UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

AIDA LICO, individually and on behalf of all others
similarly situated,

                                        Plaintiff,                    Case No.: 14-CV-4729 (JFB)(AKT)

                    -*against*-

TD Bank US Holding Company d/b/a TD Bank, N.A.,
Richard Catalano, Robert Bullock and Cassandra
Bardoo,

                                        Defendants.


PLAINTIFF'S MEMORANDUM OF LAW IN RESPONSE TO
DEFENDANTS' PARTIAL MOTION TO DISMISS


Steven John Moser (SM1133)
STEVEN J. MOSER, P.C.
3 School Street, Suite 207B
Glen Cove, New York  11542
(516) 671-1150
(516) 882-5420 (fax)
smoser@moseremploymentlaw.com
*Attorneys for Plaintiff*

<u>Table of Contents</u>

Table of Authorities ......................................................................................................... 4

INTRODUCTION ............................................................................................................. 7

ARGUMENT ..................................................................................................................... 9

1.  The Nursing Mothers Amendment to the FLSA concerns a woman's rights of personal
    privacy, First Amendment freedom of exercise of religion, and 5th and 14th amendment
    property rights. ........................................................................................................... 9

    1.1.   A Woman's Decision to Breastfeed is a Fundamental Constitutional Right. . 9

    1.2.   Breastfeeding involves First Amendment Religious Freedoms. .................... 9

    1.3.   A woman possesses a constitutional right to work. ....................................... 10

    1.4.   A woman's right to breastfeed is different than other constitutional rights in
           that failure to regularly exercise this right results in physical pain and
           threatens her with the loss of this right. ........................................................ 11

2.  Leaving the interpretation and administration of a mother's fundamental right to breast-
    feed and to work to the unreviewable discretion of a Federal Agency implicates
    constitutional concerns. ............................................................................................ 12

    1.1.   The Department of Labor has wide discretion to interpret and enforce the
           Nursing Mothers Amendment. ..................................................................... 12

    1.2.   Administrative Enforcement of the Nursing Mother Provisions of the FLSA
           is an inadequate remedy. ............................................................................... 14

    1.3.   The principle of constitutional avoidance compels the conclusion that
           Congress did not intend that the DOL administer the Nursing Mothers
           Amendment. .................................................................................................. 17

3.  The lack of a private cause of action and lack of a remedy for violations of the nursing
    mother provisions of the FLSA are entirely inconsistent with the broad remedial purposes
    of the act, as expressed by Congress. ....................................................................... 18

4.  Congress could not have intended "minimum wages or overtime" to be a nursing
    mother's remedy, for 207(r) violations, because ordinarily a violation of 207(r) does not
    lead to minimum wage or overtime violations. ....................................................... 19

5.   The language and focus, legislative history, and purpose of the FLSA all indicate a Congressional Intent to remedy violations through a private cause of action. ................. 19

    1.1.   The Plaintiff in this instance is a nursing mother, a member of the class that the statute was intended to protect. ............................................................... 20

    1.2.   The language and focus of the statute, and its legislative history and purpose all implicate enforcement by private individuals. ......................................... 21

    1.3.   If there is no private right of action for violation of 207(r), it would be the only right created by the FLSA that does not have a Private remedy. .......... 21

    1.4.   The Supreme Court has been inclined to imply a private right of action where, as here, the statute in question prohibits the deprivation of a constitutional right by a private actor. ........................................................ 22

6.   The only Circuit Court to examine 29 U.S.C. 207(r), has implicitly recognized the availability of a private right of action against an employer under 29 U.S.C. § 207(r).... 23

7.   The courts in *Salz and Vamco* did not enquire into Congressional intent. ....................... 24

8.   A Nursing Mother injured by an employer's violation of 29 U.S.C. § 207(r) should be entitled to "full relief". .................................................................................................... 24

9.   Section 215 of the FLSA is the operative anti-retaliation provision for violations of 29 U.S.C. § 207(r), and therefore the Plaintiff consents to dismissal of her claims under 29 U.S.C. § 218c. .................................................................................................................. 26

CONCLUSION ................................................................................................................... 28

## Table of Authorities

**Cases**

*Adickes v. Kress & Co.,* 398 U.S. 144 (1970);.......................................................................... 13

*Allen v. State Bd. of Elections*, 393 U.S. 544, 89 S.Ct. 817 (1969) ....................................... 22

*Amato v. City of Saratoga Springs*, 170 F.3d 311 (2d Cir. 1999)............................................ 25

*Baskin v. Parker*, 588 F.2d 965 (5th Cir. 1979).......................................................................... 25

*Bell v. Hood*, 327 U.S. 678, 66 S.Ct. 773 (1946)........................................................................ 24

*Berrios-Berrios v. Thornburg,* 716 F. Supp. 987 (E.D. Ky. 1989)............................................. 9

*Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999
    (1971) ...................................................................................................................................... 22

*Butchers' Union Slaughter-House & Live-Stock Landing Co. v. Crescent City Live-Stock
    Landing & Slaughter-House Co.*, 111 U.S. 746, 4 S. Ct. 652, 28 L. Ed. 585 (1884)............... 11

*Cannon v. Univ. of Chi.,* 441 U.S. 677, 99 S.Ct. 1946  (1979)................................................... 22

*Carey v. Piphus*, 435 U.S. 247, 98 S. Ct. 1042 (1978) ............................................................. 25

*Carey v. Population Services International*, 431 U.S. 678, 97 S. Ct. 2010, 52 L. Ed. 2d
    675 (1977).................................................................................................................................. 9

*Carter v. Dutchess Community College*, 735 F.2d 8 (2d Cir. 1984)........................................... 21

*Chisholm v. Georgia*, 2 U.S. (2 Dall.) 419 (1793)....................................................................... 18

*Cort v. Ash,* 422 U.S. 66, 95 S. Ct. 2080 (1975)......................................................................... 20

*Cruz v. Chesapeake Shipping, Inc.*, 932 F.2d 218 (3d Cir. 1991) ............................................. 21

*Davis v. Passman,* 442 U.S. 225 (1979) .............................................................................. 24, 25

*Dwares v. City of New York*, 985 F.2d 94 (2d Cir. 1993) ........................................................... 17

*Edward J. DeBartolo Corp. v. Fla. Gulf Coast Bldg. & Constr. Trades Council,* 485 U.S. 568,
    108 S.Ct. 1392 (1988)............................................................................................................... 17

*EEOC v. Vamco Sheet Metals, Inc.*, 2014 U.S. Dist. LEXIS 77436 (S.D.N.Y. Mar. 4, 2014) .... 24

*Employers Mut. Liab. Ins. v. Arrien*, 244 F. Supp. 110 (N.D.N.Y. 1965)................................... 21

*Feltington v. Moving Picture Mach. Operators Union etc.*, 605 F.2d 1251 (2d Cir. 1979)......... 25

*Fischman v. Raytheon Mfg. Co.,* 188 F.2d 783 (2nd Cir. 1951) ................................................. 22

*Fratt v. Robinson*, 203 F.2d 627 (9th Cir. 1953) ........................................................................ 22

*Green v. Bock Laundry Mach. Co.*, 490 U.S. 504, 109 S.Ct. 1981 (1989)............................. 8, 19

*Griswold v. Connecticut*, 381 U.S. 479, 85 S. Ct. 1678 (1965)..................................................... 9

*Guardians Ass'n v. Civil Ser. Comm'n,* 463 U.S. 582, 103 S.Ct 3221 (1983) ......................... 24

*Hallwood Realty Partners v. Gotham Partners*, 286 F.3d 613 (2d Cir. 2002)............................ 20

*Heckler v. Chaney*, 470 U.S. 821, 105 S.Ct. 1649 (1985) .......................................................... 12

*Herman v. RSR Sec. Servs.*, 172 F.3d 132 (2d Cir. 1999).......................................................... 19

*Hodgson v. Board of Education*, 1972 U.S. Dist. LEXIS 13288, 78 Lab. Cas. (CCH) 378 (D.N.J.
    June 13, 1972).......................................................................................................................... 12

*Idaho Sheet Metal Works, Inc. v. Wirtz*, 383 U.S. 190, 86 S.Ct. 737 (1966)............................... 12

*INS v. St. Cyr*, 533 U.S. 289, 121 S.Ct. 2271 (2001).................................................................. 17

*Jean-Louis v. Metro. Cable Commc'ns, Inc.*, 838 F. Supp. 2d 111 (S.D.N.Y. 2011) .................. 27

*Johnson* v. *Railway Express Agency, Inc.*, 421 U.S. 454 (1975) .................................................. 22

*Jones* v. *Alfred H. Mayer Co.*, 392 U.S. 409 (1968) ................................................................... 22

*Khulumani v. Barclay Nat'l Bank Ltd.*, 504 F.3d 254 (2d Cir. 2007) ....................................... 17

*Marbury v. Madison,* 5 U.S. 137 (1803) ................................................................................... 24

*Miller v. Roche Sur. & Cas. Co.*, 502 F. App'x 891 (11th Cir. 2012) ........................................ 23

*Miller v. Roche Sur. & Cas. Co.,* No. 10-Civ.-02475 (M.D. Fla.) ................................................ 23

*Peterson v. City of Greenville*, 373 U.S. 244 (1963) ................................................................. 13

*Peyton v. Rowe*, 391 U.S. 54, 88 S.Ct. 1549 (1968) ................................................................. 18

*Powell v. Wash. Post Co.*, 267 F.2d 651 (D.C. Cir. 1959) ........................................................ 12

*Roe v. Wade*, 410 U.S. 113, 93 S. Ct. 705, 35 L. Ed. 2d 147 (1973) .......................................... 9

*Rosenfield v. GlobalTranz Enterprises, Inc.*, CV 11-02327-PHX-NVW, 2012 WL 2572984 (D.
    Ariz. July 2, 2012) .............................................................................................................. 27

*Salz v. Casey's Mktg. Co.,* 2012 U.S. Dist. LEXIS 100399,19 Wage & Hour Cas. 2d (BNA) 717,
    2012 WL 2952998 (N.D. Iowa July 19, 2012) ....................................................... 3, 23, 24, 27

*Sullivan* v. *Little Hunting Park, Inc.*, 396 U.S. 229 (1969) ....................................................... 22

Tcherepnin v. Knight, 389 U.S. 332 (1967) ............................................................................. 18

*Tenn. C. v. Muscoda*, 321 U.S. 590, 64 S.Ct. 698 (1944); ......................................................... 18

*Tex. & P. R. Co. v. Rigsby*, 241 U.S. 33, 36 S.Ct. 482 (1916 ..................................................... 22

*Touche Ross & Co. v. Redington,* 442 U.S. 560, 99 S.Ct. 2479 (1979) ..................................... 22

*Transamerica Mortg. Advisors v. Lewis.* , 444 U.S. 11, 100 S.Ct. 242 (1979) ......................... 20

*Truax v. Raich*, 239 U.S. 33, 36 S.Ct. 7 (1915) ....................................................................... 11

*United States v. Darby*, 312 U.S. 100, 61 S. Ct. 451 (1941) ............................................... 18, 21

*Wiley v. Asplundh Tree Expert Co.*, 2:13-CV-02952, 2014 WL 1017208 (S.D.W. Va. Mar. 17,
    2014) ................................................................................................................................... 26

*Wirtz v. Jones*, 340 F.2d 901 (5th Cir. 1965) ........................................................................... 21

## Statutes

Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ..................................................................... 7

FLSA § 15 (29 U.S.C. § 215) ............................................................................................... 26, 27

FLSA § 17 (29 U.S.C. § 217) ..................................................................................................... 13

FLSA § 18c (29 U.S.C. § 218c) ............................................................................................ 26, 27

FLSA § 7(r)(29 U.S.C. § 207) ............................................................................................. passim

FLSA §16 (29 U.S.C. § 216) .................................................................................................. 7, 25

## Other Authorities

*Address of His Holiness John Paul II to Participants in the "Breast-Feeding: Science and
    Society," Study Sessions organized by the Pontifical Academy of Sciences,* May 12, 1995 .... 10

*Address of Pope Pius XII to the Concourse of Women of Catholic Action and Their Helpers from
    all the Dioceses of Italy*, October 26, 1941 ........................................................................... 10

Dave Jamieson, *Dirty Bathrooms, No Privacy: The Horrifying Struggles Of Breastfeeding Moms Who Need To Pump At Work*, Huffington Post (July 24, 2014) ................................................ 13

*Healing Emotions: Conversations with the Dalai Lama on Mindfulness, Emotions, and Health, 246-248, (Daniel Goleman ed., Shambhala Publications 2003)* .............................................. 10

Ilana R Chertok and Deena R Zimmerman, *Contraceptive considerations for breastfeeding women within Jewish law*, International Breastfeeding Journal 2007, 2:1 ............................. 10

Jane A. Scott, Michele Robertson, Julie Fitzpatrick, Christopher Knight and Sally Mulholland, *Occurrence of Lactational Mastitis and Medical Management: A prospective cohort study in Glasgow,* International Breastfeeding Journal 3:21 (2008) ...................................................... 12

Jeanne P. Spencer, MD, *Management of Mastitis in Breastfeeding Women,* Am Fam Physician 78 (Sep. 15, 2008) ........................................................................................................................ 12

Kaufmann R, Foxman B., *Mastitis among lactating women: Occurrence and risk factors*, Social Science and Medicine, 33 (1991) ............................................................................................ 12

Mary-Margaret Coates and Jan Riordan, *Breastfeeding and Human Lactation* (2d ed. 2009) .... 12

*Mastitis: Causes and management*, World Health Organization, Department of Child and Adolescent Health and Development (2000) ............................................................................ 11

Nirupama Laroia and Deeksha Sharma, *The Religious and Cultural Bases for Breastfeeding Practices Among the Hindus,* Journal of Breastfeeding Medicine, June 2006, 1(2) ............... 10

Reasonable Break Time for Nursing Mothers, 75 Fed. Reg. 80073 (December 21, 2010).... 11, 13

United States Government Accountability Office, *Testimony Before the Committee on Education and Labor, House of Representatives, Department of Labor: Wage and Hour Division's Complaint Intake and Investigative Processes Leave Low Wage Workers Vulnerable to Wage Theft* (2009) ............................................................................................................................... 14

William Virtue, *Mother and Infant,* Pontificiam Universitatem S. Thomae Urbe, 1995 .......... 10

6

## INTRODUCTION

On March 23, 2010 "The Patient Protection and Affordable Care Act." Pub. L. No. 111-148, 124 Stat. 119 (2010), as amended by the Health Care and Education Reconciliation Act of 2010, Pub. L. No. 111-152, 124 Stat. 1029 (2010) (the "ACA") became law.  The ACA amended the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* (the Act).   More particularly, the ACA added Section 7(r)(29 U.S.C. § 207), which states:

`       (1) An employer shall provide—

> (A) a reasonable break time for an employee to express breast milk for her nursing child for 1 year after the child's birth each time such employee has need to express the milk; and

> (B) a place, other than a bathroom, that is shielded from view and free from intrusion from coworkers and the public, which may be used by an employee to express breast milk.

Section 16 of the FLSA (29 U.S.C. § 216) states that "[a]ny employer who violates the provisions of section 6 or section 7 of this Act [29 U.S.C. § 206 or 207] shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation…"

### The Question Presented to This Court

The far-reaching question of law presented to the Court, which will affect the rights of all breastfeeding mothers at work and the well-being of their newborn children, is whether 29 U.S.C. §207(r) gives a mother a private right of action where an employer, as in Aida Lico's case, refuses to comply with the Nursing Mothers Amendment to the FLSA.

### Defendants' Arguments

Defendants argue that no private right of action exists, and that the statute empowers only the Secretary of Labor to enforce the statute.  The Defendants also argue that Congress intended

that minimum wages or overtime be the remedy for a nursing mother who is deprived of her right to express milk.

## Plaintiff's Arguments

We are confronted here with a statute which, if interpreted literally, produces an absurd, and perhaps unconstitutional, result.

*Green v. Bock Laundry Mach. Co.*, 490 U.S. 504, 527, 109 S.Ct. 1981, 1994 (1989)(Scalia, J.)(concurring).

A woman's decision to breast feed is a fundamental constitutional right.   Entrusting the interpretation and enforcement of this precious right to the unchecked discretion of an administrative agency raises constitutional concerns.   The Secretary has openly declined to issue regulations implementing this provision.  The Secretary is not required to investigate or enforce alleged violations – instead the Secretary's enforcement decisions are entirely discretionary and therefore not subject to review by the Courts.   The principle of constitutional avoidance suggests that Congress did not intend the government to interpret and enforce the fundamental constitutional right of a mother to breastfeed her child.

The idea that Congress intended wages to compensate a nursing mother for deprivation of her right to breastfeed her child, a remedy that is entirely incongruous with the wrong stretches the boundaries of logic.

The FLSA is a remedial act which is to be broadly construed.

There is a scarcity of case law interpreting 29 U.S.C. 207(r).   The two District Courts who have interpreted 207 did so in a vacuum, and did not consider the broad remedial nature of the statute, nor did they engage in a profound inquiry into Congressional intent.    The *only* Circuit Court to consider the issue has impliedly recognized a private right of action under 29 U.S.C. § 207.

8

This is a case of first impression in the Eastern District of New York.   This Court is faced with no controlling precedent.

## ARGUMENT

**1.  The Nursing Mothers Amendment to the FLSA concerns a woman's rights of personal privacy, First Amendment freedom of exercise of religion, and 5th and 14th amendment property rights.**

### 1.1. A Woman's Decision to Breastfeed is a Fundamental Constitutional Right.

Breastfeeding is the most elemental form of parental care.  It is a communion between mother and child that, like marriage, is 'intimate to the degree of being sacred.'"

*Dike v. Sch. Bd.*, 650 F.2d 783, 787 (5th Cir. 1981) (Godbold, J.)(quoting *Griswold v.*

*Connecticut*, 381 U.S. 479, 486, 85 S. Ct. 1678, 1682 (1965).

The Constitution protects from undue state interference citizens' freedom of personal choice in some areas of marriage and family life. These protected interests have been described as rights of personal privacy or as "fundamental" personal liberties. *See Carey v. Population Services International*, 431 U.S. 678, 684, 97 S. Ct. 2010, 2015, 52 L. Ed. 2d 675, 684 (1977); *Roe v. Wade*, 410 U.S. 113, 152-53, 93 S. Ct. 705, 726-27, 35 L. Ed. 2d 147, 176-77 (1973); *id.* at 209-12, 93 S. Ct. at 756-57, 35 L. Ed. 2d at 186-87 (Douglas, J., concurring); *Griswold v. Connecticut,* 381 U.S. 479, 484, 85 S. Ct. 1678, 1681, 14 L. Ed. 2d 510, 514 (1965). While the opinions of the Court have linked these rights to various constitutional provisions, their existence is now an established part of our constitutional jurisprudence.  Among these protected liberties are individual decisions respecting marriage, procreation, contraception, abortion, and family relationships.  The Supreme Court has long recognized that parents' interest in nurturing and rearing their children deserves special protection...

*Dike*, 650 F.2d at 785-86; *See also Berrios-Berrios v. Thornburg,* 716 F. Supp. 987, 990

(E.D. Ky. 1989)("[A] woman does possess a fundamental interest in her decision to breast-feed her child").

### 1.2. Breastfeeding involves First Amendment Religious Freedoms.

"Breastfeeding is…intimate to the degree of being sacred." *Dike v. Sch. Bd.*, 650 F.2d at

787.   This view of breastfeeding as a sacred act is shared by all major faiths, and therefore

implicates First Amendment religious freedoms.

9

In the Old Testament God's care for man is compared to that of a nursing mother for her child.  *See* Isaiah 66:10-13; Psalm 22:9.  In the New Testament, the Apostle Paul also analogizes his care for the Church as the care of a nursing mother for her child.  1 Thessalonians 2:7.

Both Pope John Paul II, and Pope Pius XII encouraged women to breast feed their children.[1]     In 1995, Fr. William Virtue published *Mother and Infant*, in which he concludes that "it has been the constant teaching of the Church that there is a serious obligation of maternal nursing."[2]

Breastfeeding is valued by Jewish tradition, and Jewish Law requires a period of nursing of 24 months.[3]  The Quran also requires a woman to breastfeed for two years.  *Quran* 2:233.  Sacred Hindu texts underscore the importance of breastfeeding.[4]   According to the Dalai Lama breastfeeding is the first act between mother and baby, in which a mother's expression of love, and the child's feeling of closeness with the mother, are realized. [5]

### 1.3. A woman possesses a constitutional right to work.

The right to follow any of the common occupations of life is an inalienable right, it was formulated as such under the phrase 'pursuit of happiness' in the declaration of independence, which commenced with the fundamental proposition that 'all men are created equal; that they are endowed by their Creator with certain inalienable rights; that among these are life, liberty, and the pursuit of happiness.' This right is a large ingredient in the civil liberty of the citizen.

---

[1] *Address of Pope Pius XII to the Concourse of Women of Catholic Action and Their Helpers from all the Dioceses of Italy*, October 26, 1941, *available at* http://www.catholictradition.org/Encyclicals/questa2.htm; *Address of His Holiness John Paul II to Participants in the "Breast-Feeding: Science and Society," Study Sessions organized by the Pontifical Academy of Sciences,* May 12, 1995, *available at* http://www.vatican.va/holy_father/john_paul_ii/speeches/1995/may/documents/hf_jp-ii_spe_19950512_accademia-scienze_en.html.
[2] Pontificiam Universitatem S. Thomae Urbe, 1995.
[3] Shulchan Arukh, Even Haezer Siman 143;  Ilana R Chertok and Deena R Zimmerman, *Contraceptive considerations for breastfeeding women within Jewish law*, *International Breastfeeding Journal* 2007, 2:1, *available at* http://www.ncbi.nlm.nih.gov/ pmc/articles/PMC1779768/.
[4] Nirupama Laroia and Deeksha Sharma, *The Religious and Cultural Bases for Breastfeeding Practices Among the Hindus,* Journal of Breastfeeding Medicine, June 2006, 1(2):94-98 *available at* http://online.liebertpub.com/doi/abs/10.1089/bfm.2006.1.94.
[5] *Healing Emotions: Conversations with the Dalai Lama on Mindfulness, Emotions, and Health,*  246-248, (Daniel Goleman ed., Shambhala Publications 2003).

*Butchers' Union Slaughter-House & Live-Stock Landing Co. v. Crescent City Live-Stock Landing & Slaughter-House Co.*, 111 U.S. 746, 762, 4 S. Ct. 652, 28 L. Ed. 585 (1884)(emphasis in original).   "[T]he right to work for a living in the common occupations of the community is of the very essence of the personal freedom and opportunity" protected by the constitution.   *Truax v. Raich*, 239 U.S. 33, 41, 36 S.Ct. 7, 10 (1915).

> **1.4. A woman's right to breastfeed is different than other constitutional rights in that failure to regularly exercise this right results in physical pain and threatens her with the loss of this right.**

Restrictions placed on employee conduct while at work typically do not have far reaching consequences when the employee is not at work. For instance, an employee who is prohibited from bringing a firearm to work is of course not deprived of the right to own a gun or visit the shooting range on weekends. An employee who is prohibited from engaging in political debate at the office is free to express his convictions and participate in protests on her personal time.

However, a mother's fundamental right to make decisions regarding the care of her child, and the child's right to nourishment are endangered if she is not allowed to express milk as necessary while at work. In this way, an employer's conduct can result in the complete deprivation of a constitutional right both in and outside of work.

A nursing mother must express milk as often as she would feed her child.   If she is unable to do so, she may experience a drop in milk supply, resulting in her inability to nurse her child, and an infection.  Reasonable Break Time for Nursing Mothers, 75 Fed. Reg. 80073, 80075 (December 21, 2010).    Milk stasis, or the interruption of the regular flow of breast milk, is the primary cause of mastitis[6], a painful, debilitating inflammatory condition.[7]

---

[6] *Mastitis: Causes and management*, World Health Organization, Department of Child and Adolescent Health and Development (2000), *available at* http://whqlibdoc.who.int/hq/2000/WHO_FCH_CAH_00.13.pdf?ua=1 (Mastitis may produce acute symptoms that prompt women to consider cessation of breastfeeding).

Unsurprisingly, studies have shown that women employed full-time outside the home are at a higher risk of mastitis and are less likely to continue breastfeeding their child.[8][9]  Of Course, prolonged interference with a mother's right to breastfeed can directly result in a permanent inability to produce breast milk.[10]

**2.  Leaving the interpretation and administration of a mother's fundamental right to breast-feed and to work to the unreviewable discretion of a Federal Agency implicates constitutional concerns.**

   **1.1. The Department of Labor has wide discretion to interpret and enforce the Nursing Mothers Amendment.**

Generally, an agency decision not to prosecute or enforce a statute is a decision committed to an agency's discretion, and is therefore not reviewable by the Courts.  *Heckler v. Chaney*, 470 U.S. 821, 831, 105 S.Ct. 1649, 1655 (1985).   The Secretary has "considerable discretion" in the administration of the FLSA.  *Idaho Sheet Metal Works, Inc. v. Wirtz*, 383 U.S. 190, 205, 86 S.Ct. 737, 747 (1966).   The decision to bring an action to enjoin violations of the FLSA is *entirely* within the Secretary's discretion.  *Powell v. Wash. Post Co.*, 267 F.2d 651, 652 (D.C. Cir. 1959).  *See also Hodgson v. Board of Education*, 1972 U.S. Dist. LEXIS 13288, 4, 78 Lab. Cas. (CCH) P33, 378 (D.N.J. June 13, 1972)(Only the Secretary can bring an action to enjoin violations of the FLSA, and an aggrieved employee "cannot compel its institution.").

---

[7] Jane A. Scott, Michele Robertson, Julie Fitzpatrick, Christopher Knight and Sally Mulholland, *Occurrence of Lactational Mastitis and Medical Management: A prospective cohort study in Glasgow,* International Breastfeeding Journal 3:21 (2008), *available at* http://www.internationalbreastfeedingjournal.com/content/3/1/21.   In fact, a mastitis treatment plan calls for frequent and effective milk removal.   Academy of Breastfeeding Medicine, *Clinical Protocol No. 4: Mastitis* (2008), *available at*  http://www.bfmed.org/media/files/protocols/protocol_4mastitis.pdf .
[8]  The suggested explanation is milk stasis caused by long intervals between the breastfeeds and lack of time for adequate milk expression. Kaufmann R, Foxman B., *Mastitis among lactating women: Occurrence and risk factors*, Social Science and Medicine, 33:701-705 (1991), *available at* http://deepblue.lib.umich.edu/bitstream/handle/2027.42/ 29639/0000728.pdf?sequence=1.
[9] The cessation of breastfeeding is a "common complication of mastitis."  Jeanne P. Spencer, MD, *Management of Mastitis in Breastfeeding Women,* Am Fam Physician 78:727-731 (Sep. 15, 2008) *available at* http://www.aafp.org/afp/2008/0915/p727.html.
[10] The hormone that makes breast milk is called prolactin.  If a mother does not express milk by either nursing or pumping, her body begins to secrete prolactin inhibiting factor (PIF).  PIF sends a signal to the mother's brain that the milk isn't needed and shuts down milk production. Mary-Margaret Coates and Jan Riordan, *Breastfeeding and Human Lactation* (2d ed. 2009).

The government is responsible for the discriminatory act of a private party when by its law the government has compelled the act.  *Adickes v. Kress & Co.,* 398 U.S. 144 (1970); *See also Peterson v. City of Greenville*, 373 U.S. 244, 248 (1963)("When the [government] has commanded a particular result, it has saved to itself the power to determine that result and thereby 'to a significant extent' has 'become involved' in it").

The Defendants' interpretation of 207(r) would take the securing of a fundamental right out of the hands of nursing mothers and the Courts, and into the unreviewable discretion of a federal agency.   In December 2010 the Department of Labor (DOL) issued a request for information from the public regarding the Nursing Mothers Amendment.  Reasonable Break Time for Nursing Mothers, 75 Fed. Reg. 80073, 80075 (December 21, 2010).   In that request for information, the DOL announced that it would not be issuing regulations interpreting the nursing mothers amendment to the FLSA, and it has not done so.   The Field Operations Handbook has not been amended to guide investigators in resolving employee complaints regarding the Nursing Mother Amendments.   No Field Assistance Bulletin has been published. Plaintiff's counsel has been unable to uncover a single action brought by the DOL to remedy violations of 207(r).    The DOL has not exercised its authority under 29 U.S.C. § 217 to enjoin violations of 207(r).   Not a single temporary restraining order has been filed.    Out of millions of working mothers, only 105 cases of reported violations of the Nursing Mothers Amendment were closed by the DOL from March 2010 (the date of the passage of the act) until late 2013.[11]

---

[11] Dave Jamieson, *Dirty Bathrooms, No Privacy: The Horrifying Struggles Of Breastfeeding Moms Who Need To Pump At Work*, Huffington Post (July 24, 2014), *available at*  http://www.huffingtonpost.com/2014/07/24/ breastfeeding-pumping-at-work_n_5610554.html.   The Huffington Post published this article after receiving a response to a Freedom of Information Request to the DOL which revealed that only 105 cases of alleged violations of the FLSA Nursing Mothers Amendment were closed from its passage until late 2013.

13

### 1.2. Administrative Enforcement of the Nursing Mother Provisions of the FLSA is an inadequate remedy.

The Department of Labor, in response to a nursing mother's complaint of her employer's non-compliance, can "mak[e] phone calls to the complainant's employer (known as conciliations)… Conciliations are generally limited to a single, minor violation, such as a missed paycheck, or an issue affecting a single worker. A conciliation is used to resolve a complaint quickly and with minimal resources on the part of [the DOL]. Investigative work for conciliations is generally limited to a telephone conversation in which the [DOL] investigator explains the specific complaint against the employer, describes applicable laws, and requests that the employer comply with the law and pay any back wages due. [DOL] staff generally do not visit the employer's establishment or verify information provided by the employer." United States Government Accountability Office, *Testimony Before the Committee on Education and Labor, House of Representatives, Department of Labor: Wage and Hour Division's Complaint Intake and Investigative Processes Leave Low Wage Workers Vulnerable to Wage Theft* (2009), *available at* http://www.gao.gov/assets/130/122107.pdf. The most recent Government Accountability Office forensic investigation of the [DOL] found widespread failures in the conciliation process. *Id.* For instance, "[DOL] investigators are allowed to drop conciliations when the employer denies the allegations…" *Id.*

Pursuant to a Freedom of Information request, the Huffington Post obtained results of such conciliations conducted by the DOL with regard to alleged violations of the nursing mothers amendment.[12]

---

[12] FLSA Narrative, McDonald's Case ID No. 1652120 (July 6, 2012), Exhibit 1 to Declaration of Steven J. Moser; Dollar General Case ID No. 1614284 (June 6, 2011), Ex. 2 to Moser Decl.; Meijer Case ID No. 1617261 (2012), Ex. 3 to Moser Decl.; McDonald's #4698 Case ID No. 1622572 (July 15, 2011), Ex. 4; Sodexo Case ID No. 1635490 (Nov. 10, 2011), Ex. 5; Puget Sound Health Care Center Case ID No. 1665884 (Sept. 12, 2012), Ex. 6; Teledirect Call Center Case ID 1670221 (Dec. 10, 2012), Ex. 7; Health South North Case ID No. 1673123 (2012), Ex. 8.

One report concerns a nursing mother who went on maternity leave in November 2011 and returned to work at McDonalds in February 2012.[13]   Upon her return to work, she used a breast pump to express breast milk because she was nursing her baby and planned to do so until October 2012.   She was forced to use a public restroom to express milk because no private area was provided by McDonalds.   Both the Store Manager and the Operations Manager were aware of this practice.   Rather than simply accommodate her obvious need to express milk however, the Operations Manager demanded a doctor's note.   In February 2012 the employee provided the doctor's note explaining that she must express milk at work.

On April 5, 2012 the nursing mother complained to the DOL.   On April 10, 2012 a Wage & Hour Investigator called the Store Manager.   Three days later, on April 13, 2012 the Operations Manager prohibited the employee from expressing milk on company property.   The nursing mother began walking to a nearby library to express milk.    The report is silent as to what actions the Secretary of Labor took between April 13, 2012 and June 6, 2012.   However, no suit was filed seeking injunctive relief.    The investigator wrote that a "final telephonic conference" was held on June 6, 2012 in which the employer agreed to comply with 207(r). However, according to the same report, the employer continued to force the employee to express milk off-premises until June 19, 2012.   Finally, on June 20, 2012 the employee was allowed to express milk, but her regular working hours were reduced from 20 to 7.25.

With regard to whether McDonald's knew its actions were willful, the DOL concluded:

Although given the timeline of events one could conclude that the violations were willful, [the Secretary] believes that the violations were due to naivety of the front line manager, as opposed to deliberate willfulness. Furthermore, it appears that the corporate office has not yet fully developed and communicated a comprehensive policy of the nursing mother break time requirements, or developed sufficient oversight to ensure compliance with these relatively new requirements.  Hence, the violations are not deemed willful.

---

[13] FLSA Narrative, McDonald's Case ID No. 1652120 (July 6, 2012), Ex. 1 to Moser Decl.

No action to enjoin the employer's conduct under 29 U.S.C. 217 was ever brought. After being forced to breast feed in a McDonald's bathroom, spending three months walking fifteen minutes back and forth from the library every time she needed to express milk, and having her hours reduced, the DOL closed the employee's case.   Based upon the conciliation reached between the department of labor and McDonalds, McDonalds paid the woman less than $150.00 in "lost wages" and erected a makeshift tent in the employee break room.

Unfortunately, this is not an isolated case.   The DOL was unable to prevent a Dollar General Store from reducing a nursing mother's working hours from 29 to 12, forcing the woman to resign.[14]   While working, the woman was forced to express milk in a public bathroom with her body turned away from the door.    The employer eventually paid the woman $814.00.[15] Another McDonald's employee resigned during the pendency of an investigation. [16]  She had alleged that she was only allowed to express milk when the restaurant was not busy.  A Sodexo employee was originally forced to sit on the floor of the employee bathroom, and then was later "allowed" to use a public bathroom so that she wouldn't have to sit on the floor.[17]   "[D]ue to a sewage problem", the woman returned to the employee bathroom floor.  *The investigation was closed after three months with no mention in the report of how the employer would comply with the nursing mother amendments*.[18]

One hospital employee complained that as a result of being unable to express milk while at work, her milk dried up.  The investigator concluded that the employer had violated Section 7(r) by failing to allow the employee to express milk as needed and not providing a private place

---

[14] Dollar General Case ID No. 1614284 (June 6, 2011), Ex. 2 to Moser Decl.
[15] *Id.*
[16] McDonald's #4698 Case ID No. 1622572 (July 15, 2011), Ex. 4 to Moser Decl.
[17] Sodexo Case ID No. 1635490 (Nov. 10, 2011), Ex. 5 to Moser Decl.
[18] *Id.*

free from intrusion.   The employer promised future compliance and the case was closed without any action.[19]

This could not have been the remedy (or lack thereof)  that Congress intended.

### 1.3. The principle of constitutional avoidance compels the conclusion that Congress did not intend that the DOL administer the Nursing Mothers Amendment.

The doctrine of constitutional avoidance has been expressed as follows:

[W]here an otherwise acceptable construction of a statute would raise serious constitutional problems, the Court will construe the statute to avoid such problems unless such construction is plainly contrary to the intent of Congress… This approach not only reflects the prudential concern that constitutional issues not be needlessly confronted, but also recognizes that Congress, like this Court, is bound by and swears an oath to uphold the Constitution. The courts will therefore not lightly assume that Congress intended to infringe constitutionally protected liberties...

*Edward J. DeBartolo Corp. v. Fla. Gulf Coast Bldg. & Constr. Trades Council,* 485 U.S. 568, 575, 108 S.Ct. 1392, 1397-98 (1988)(citations omitted).  Stated another way "if an otherwise acceptable construction of a statute would raise constitutional concerns and where an alternative interpretation of the statute is "fairly possible" the Court is obligated to construe the statute to avoid such problems.  *INS v. St. Cyr*, 533 U.S. 289, 299-300, 121 S.Ct. 2271, 2279 (2001).

In the area of constitutional rights, the government may be subject to liability taken by private actors taken in violation of liberty or property if the government directed or participated in the violation.  *Khulumani v. Barclay Nat'l Bank Ltd.*, 504 F.3d 254, 316 (2d Cir. 2007); *See Dwares v. City of New York*, 985 F.2d 94, 98 (2d Cir. 1993).   In the above McDonald's example, the common solution reached by McDonalds and the Department of Labor was a makeshift tent erected in the break room.

According to the DOL's website, the agency "is committed to providing its <u>customers — America's employers</u>, workers, job seekers and retirees — with clear and easy-to-access

---

[19] Health South North Case ID No. 1673123 (2012), Ex. 8 to Moser Decl.

information on how to comply with federal employment laws.   Such information and guidance is known as 'compliance assistance.'"[20]

Surely Congress could not have intended that the Secretary of Labor participate in conciliation efforts with an employer.   By authorizing employer actions which may infringe on a nursing mother's right to breast feed, the Department of Labor's actions rise to the level of government infringement of a fundamental right.

**3.  The lack of a private cause of action and lack of a remedy for violations of the nursing mother provisions of the FLSA are entirely inconsistent with the broad remedial purposes of the act, as expressed by Congress.**

> **remedial**, *adj.* [], 1. Affording or providing a remedy; providing the means of obtaining redress[]; [2].  Of or relating to a means of enforcing an existing substantive right.
>
> - Black's Law Dictionary, 641-2 (4th Pocket ed. 2011).

It has long been recognized that courts should be "guided by the familiar canon of statutory construction that remedial legislation should be construed broadly to effectuate its purposes." *Tcherepnin v. Knight*, 389 U.S. 332, 336 (1967); *See Chisholm v. Georgia*, 2 U.S. (2 Dall.) 419, 476 (1793)(Constitution's extension of judicial power over diversity cases is "remedial, [and] therefore, to be construed liberally"); *Peyton v. Rowe*, 391 U.S. 54, 65, 88 S.Ct. 1549, 1555 (1968)(Recognizing the "canon of construction that remedial statutes should be liberally construed").

The FLSA, as a remedial law, is "a law providing a means to enforce rights or redress injuries." *Black's Law Dictionary* 642 (4th pocket ed. 2011).   The FLSA was enacted to eliminate "labor conditions detrimental to the…health, efficiency, and general well-being of workers."   29 U.S.C. § 202;  *See United States v. Darby*, 312 U.S. 100, 109, 61 S. Ct. 451 (1941).   "[The Act is] remedial and humanitarian in purpose. We are not here dealing with mere

---

[20] http://www.dol.gov/whd/regs/compliance/ca_main.htm, last visited 1/29/2015 (emphasis added).

chattels or articles of trade but with the rights of those who toil, of those who sacrifice a full measure of their freedom and talents to the use and profit of others." *Tenn. C. v. Muscoda*, 321 U.S. 590, 597, 64 S.Ct. 698, 703 (1944); *See also Herman v. RSR Sec. Servs.*, 172 F.3d 132, 139 (2d Cir. 1999)("*Above and beyond the plain language [of the FLSA]*, the remedial nature of the statute [] warrants an expansive interpretation of its provisions….")(emphasis added).

**4. Congress could not have intended "minimum wages or overtime" to be a nursing mother's remedy, for 207(r) violations, because ordinarily a violation of 207(r) does not lead to minimum wage or overtime violations.**

A minimum wages or overtime remedy is entirely incongruous with violations of 207(r). Violations of the nursing mother provisions do not result in lost wages or overtime, and therefore is an entirely inadequate remedy. The DOL's request for information from the public concerning the nursing amendment acknowledges that "[b]ecause employers are not required to compensate employees for break time to express breast milk, *in most circumstances there will not be any unpaid minimum wage or overtime compensation associated with the failure to provide such breaks.*" 75 Fed. Reg. 80073, 80078 (emphasis added).  If an employer prohibits a nursing mother from expressing milk at work, the mother may disregard her employer's instructions or comply.  If she complies, she is still working, and there is no overtime or minimum age violation.  If she disregards the instruction, and expresses milk anyway, the employer is not obligated to compensate her for the time spent expressing milk.

**5. The language and focus, legislative history, and purpose of the FLSA all indicate a Congressional Intent to remedy violations through a private cause of action.**

The meaning of terms on the statute books ought to be determined, not on the basis of which meaning can be shown to have been understood by a larger handful of the Members of Congress; but rather on the basis of which meaning is (1) most in accord with context and ordinary usage, and thus most likely to have been understood by the whole Congress which voted on the words of the statute (not to mention the citizens subject to it), and (2) most compatible with the surrounding body of law into which the

19

> provision must be integrated -- a compatibility which, by a benign fiction, we assume
> Congress always has in mind.

*Green v. Bock Laundry Mach. Co.*, 490 U.S. 504, 528, 109 S.Ct. 1981, 1994 (1989)(Scalia, J.)
(concurring)(emphasis added).

Federal statutes can create causes of action expressly or impliedly. *Hallwood Realty
Partners v. Gotham Partners*, 286 F.3d 613, 618 (2d Cir. 2002). In *Cort v. Ash,* 422 U.S. 66, 95
S. Ct. 2080 (1975); the Supreme Court set forth four factors to be considered in determining
whether an implied right of action exists under a federal statute: (1) whether plaintiff is one of
the class members intended to benefit from the statute, (2) whether there is any indication,
explicit or implicit, of legislative intent to create or deny a right of action, (3) whether a right of
action is "consistent with the underlying purposes of the legislative scheme," and (4) whether
"the cause of action [is] one traditionally relegated to state law, in an area basically the concern
of the States."  Later decisions have clarified that Congressional intent is the central inquiry in
determining whether a private right of action exists:

> "[I]n *Cort v. Ash*, the Court set forth four factors that it considered 'relevant' in
> determining whether a private remedy is implicit in a statute not expressly providing one.
> But the Court did not decide that each of these factors is entitled to equal weight.  The
> central inquiry remains whether Congress intended to create, either expressly or by
> implication, a private cause of action. Indeed, the first three factors discussed in *Cort* --
> the language and focus of the statute, its legislative history, and its purpose, see 422 U.S.,
> at 78 -- are ones traditionally relied upon in determining legislative intent." 442 U.S., at
> 575-576.

*Transamerica Mortg. Advisors v. Lewis*.  , 444 U.S. 11, 23-24, 100 S.Ct. 242, 249
(1979)(emphasis added).

### 1.1. The Plaintiff in this instance is a nursing mother, a member of the class that the statute was intended to protect.

The language of the FLSA is unequivocal:  "An employer shall provide…a reasonable
break time for an employee to express breast milk for her nursing child for 1 year after the child's
birth each time such employee has need to express the milk; and…a place, other than a

bathroom, that is shielded from view and free from intrusion from coworkers and the public, which may be used by an employee to express breast milk." 29 USC 207(r).

### 1.2. The language and focus of the statute, and its legislative history and purpose all implicate enforcement by private individuals.

As previously mentioned, the purpose of the FLSA is to eliminate "labor conditions detrimental to the…health, efficiency, and general well-being of workers."  29 U.S.C. § 202. The FLSA is a remedial statute.  *See United States v. Darby*, 312 U.S. at 109, 61 S. Ct. at 451. A remedial statute is a "law providing a means to enforce rights or redress injuries."  *Black's Law Dictionary* 983 (4th pocket ed. 2011).  "It is well recognized..that remedial legislation must be liberally construed and applied in the light of the intent and purpose of the statute involved." *Employers Mut. Liab. Ins. v. Arrien*, 244 F. Supp. 110, 113 (N.D.N.Y. 1965).

Congress enacted the FLSA in 1938 for the purpose of rectifying labor conditions.  *Cruz v. Chesapeake Shipping, Inc.*, 932 F.2d 218, 226 (3d Cir. 1991).   Since its inception, private lawsuits under the FLSA have been the cornerstone of enforcement.  From 1938 until 1961, the statute was exclusively enforced through private actions.   Not until 1961 was the Wage and Hour Division authorized to commence an action on behalf of an aggrieved employee.  *See Wirtz v. Jones*, 340 F.2d 901, 903 (5th Cir. 1965).  In 1961, the Secretary's enforcement powers were enlarged solely so that the purposes of the act could be achieved.  *Id.*

### 1.3. If there is no private right of action for violation of 207(r), it would be the only right created by the FLSA that does not have a Private remedy.

Every violation of 29 U.S.C. § 207 gives rise to a private cause of action and a remedy which is intended to make the employee whole.   Interpreting the statute to not grant a private right of action runs contrary to an expansive interpretation of the statute so that it has the widest possible effect on the national economy. *Carter v. Dutchess Community College*, 735 F.2d 8, 12 (2d Cir. 1984).

21

### 1.4. The Supreme Court has been inclined to imply a private right of action where, as here, the statute in question prohibits the deprivation of a constitutional right by a private actor.

*[I]t is important, in a civilized society, that the judicial branch of the Nation's government stand ready to afford a remedy in these circumstances.*

*Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 411, 91 S.Ct. 1999, 2012 (1971)(Harlan, J.)(concurring).

In 1916, the Supreme Court noted that "in every case, where a statute enacts, or prohibits a thing for the benefit of a person, he shall have a remedy upon the same statute for the thing enacted for his advantage, or for the recompense of a wrong done to him contrary to the said law." *Tex. & P. R. Co. v. Rigsby,* 241 U.S. 33, 39, 36 S.Ct. 482, 484 (1916).   In *Touche Ross & Co. v. Redington,* 442 U.S. 560, 569, 99 S.Ct. 2479, 2485 (1979) the Court observed that it had found an implied private cause of action where a federal statute in either prohibited certain conduct or created federal rights in favor of private parties.  Examples of cases in which a private right of action has been implied to protect federal rights in favor of private parties have included sex discrimination in violation of Title IX of the Education Amendments of 1972, (*Cannon v. Univ. of Chi.,* 441 U.S. 677, 99 S.Ct. 1946  (1979)(20 U.S.C. § 1681),  race discrimination in violation of the Civil Rights Act of 1866 (*Johnson* v. *Railway Express Agency, Inc*., 421 U.S. 454 (1975)(42 U.S.C. § 1981); *Sullivan* v. *Little Hunting Park, Inc*., 396 U.S. 229 (1969) (42 U. S. C. § 1982); *Jones* v. *Alfred H. Mayer Co*., 392 U.S. 409 (1968) (42 U.S.C. § 1982)), and race discrimination under the Voting Rights Act of 1965 (*Allen v. State Bd. of Elections*, 393 U.S. 544, 89 S.Ct. 817 (1969)(42 U.S.C. § 1973).

With the exception of the implied private rights found under the Securities Exchange Act (*See e.g. Fischman v. Raytheon Mfg. Co.,* 188 F.2d 783 (2nd Cir. 1951); *Fratt v. Robinson*, 203 F.2d 627 (9th Cir. 1953)), the implied private right of action arises primarily in the context of a

statute prohibiting private deprivation of constitutional rights.   Because 207(r) prohibits the private deprivation of a fundamental constitutional right, a private right of action should be available to an aggrieved mother.

### 6.   The only Circuit Court to examine 29 U.S.C. 207(r), has implicitly recognized the availability of a private right of action against an employer under 29 U.S.C. § 207(r).

The Plaintiff in *Miller v. Roche Sur. & Cas. Co.*, 502 F. App'x 891 (11th Cir. 2012), sued for compensatory damages for violations of the Nursing Mothers Amendment.  Amended Complaint, *Miller v. Roche Sur. & Cas. Co.,* No. 10-Civ.-02475 (M.D. Fla. Nov. 15, 2010), ECF No. 6.

The Defendant answered the complaint and asserted as an affirmative defense that the Plaintiff had failed to state a cause of action.  Amended Answer, *Miller v. Roche Sur. & Cas. Co.,* No. 10-Civ.-02475 (M.D. Fla. Mar. 24, 2011), ECF No. 13.   The District Court denied the Defendant's motion for summary judgment, implicitly recognizing a private cause of action for violations of 29 U.S.C. 207(r).   ECF No. 39 (Oct. 13, 2011).

Before trial the Plaintiff, perhaps anticipating the weakness of her case, moved for dismissal of her claims under 29 U.S.C. 207(r).   ECF No. 49 (Nov. 9, 2011).   This motion was also *denied* by the court.   ECF 59 (Nov. 22, 2011).   The case proceeded to trial.   After the close of the Plaintiff's testimony, the trial court granted the employer's motion for judgment as a matter of law, concluding that the evidence was insufficient for a reasonable jury to find that the employer violated 207(r).  *Miller v. Roche Sur. & Cas. Co.*, 502 F. App'x at 893.

On appeal, contrary to the TD Bank's contention, the 11th Circuit considered the Plaintiff's cause of action under 29 U.S.C. 207(r).   The 11th Circuit noted:

Section 207(r)(1) requires that an employer provide a reasonable break time and a private place, other than a bathroom, for an employee to express breast milk. § 207(r)(1).

*Id.*   Rather than finding that a private cause of action did not exist in the first instance, the 11th Circuit determined that the Defendants had complied with 207(r).   Appeals courts do not academically review cases for which no cause of action exists and consider them on the merits.

### 7.  The courts in *Salz and Vamco* did not enquire into Congressional intent.

Neither Judge O'Brien (in *Salz v. Casey's Mktg. Co.,* 2012 U.S. Dist. LEXIS 100399,19 Wage & Hour Cas. 2d (BNA) 717, 2012 WL 2952998 (N.D. Iowa July 19, 2012), nor Judge Oetken (in *EEOC v. Vamco Sheet Metals, Inc.*, 2014 U.S. Dist. LEXIS 77436 (S.D.N.Y. Mar. 4, 2014)) examined the statute in the light of the broad remedial purposes of the FLSA or the fundamental constitutional rights implicated.

Instead, the *Salz* and *Vamco* courts appear to have relied on the DOL request for information from the public.   75 FR 80073.   However, the Department's request for information does not engage in a reasoned analysis of 207(r).   *Id.*

### 8.  A Nursing Mother injured by an employer's violation of 29 U.S.C. § 207(r) should be entitled to "full relief".

> *The very essence of civil liberty certainly consists in the right of every individual to claim the protection of the laws, whenever he receives an injury.  One of the first duties of government is to afford that protection…   [I]t is a general and indisputable rule, that where there is a legal right, there is also a legal remedy by suit or action at law, whenever that right is invaded.*
>
> *The government of the United States has been emphatically termed a government of laws, and not of men. It will certainly cease to deserve this high appellation, if the laws furnish no remedy for the violation of a vested legal right.*

*Marbury v. Madison,* 5 U.S. 137 (1803)(Chief Justice Marshall).

Whether a litigant has a cause of action "is analytically distinct and prior to the question of what relief, if any, a litigant may be entitled to receive."   *Davis v. Passman,* 442 U.S. 225, 239 (1979).   Once a private right is established, however, it is "well settled that where legal rights have been invaded, and a federal statute provides for a general right to sue for such

invasion, federal courts may use any available remedy to make good the wrong done." *Bell v. Hood*, 327 U.S. 678, 684, 66 S.Ct. 773, 777 (1946); *See also Guardians Ass'n v. Civil Cer. Comm'n,* 463 U.S. 582, 594, 103 S.Ct 3221, 3228 (1983)(The court may fashion a remedy to afford "full relief").

What constitutes "full relief?"   A nursing mother who stops breastfeeding because her employer prohibits her from expressing milk at work has been harmed.   A mother's loss of her ability to breast feed is invaluable.   Her child has been harmed.   If her physical need to express milk at work is not accommodated she may experience physical pain, humiliation (if, as in the case of Aida Lico, her breast milk leaks onto her clothing), and anxiety.   If she loses her employment due to the interference she will suffer financial harm.

A damages remedy is surely appropriate in this case. "Historically, damages have been regarded as the ordinary remedy for an invasion of personal interests in liberty." *Davis v. Passman*, 442 U.S. at 245, 99 S.Ct. at 2277.   An employer's deprivation of a mother's right to breastfeed her child is analogous to cases involving the deprivation of constitutional rights, in which "Federal courts have recognized that personal humiliation, embarrassment, and mental distress…are injuries whose redress in damages is considered compensatory." *Baskin v. Parker*, 588 F.2d 965, 970 (5th Cir. 1979).

Nominal damages have also been considered a suitable remedy for deprivation of constitutional rights, even in the absence of an actual injury.   *Amato v. City of Saratoga Springs*, 170 F.3d 311, 317 (2d Cir. 1999).   The Second Circuit has explicitly authorized the award of nominal damages for the private deprivation of constitutional rights, analogizing them to constitutional torts.  *Feltington v. Moving Picture Mach. Operators Union etc.*, 605 F.2d

1251, 1258 (2d Cir. 1979)(applying by analogy the Supreme Court's decision in *Carey v. Piphus*, 435 U.S. 247, 98 S. Ct. 1042 (1978)).

Aside from damages for lost wages and other compensatory damages, and nominal damages, an aggrieved plaintiff should also be entitled to an award of attorney's fees and costs under 29 U.S.C. § 216.

The Plaintiff therefore seeks the following to remedy the Defendants' violations of 20 U.S.C. § 207(r) as set forth in the Plaintiff's First Amended Complaint:

a.  Nominal damages;

b.  []

c.  Reinstatement;

d.  The payment of lost wages (back and front pay) and an additional equal amount as liquidated damages;

e.  Compensatory damages for Physical pain, Emotional Anguish and Humiliation;

f.  Appropriate equitable and injunctive relief to remedy Defendant' violations, including but not necessarily limited to an order declaring that Defendants' employment policies with regard to nursing mothers violate the FLSA, and an order enjoining Defendant from continuing their unlawful practices;

g.  []

h.  Attorney's fees and costs;

i.  Such other injunctive and equitable relief as the Court may deem just and proper.

**9. Section 215 of the FLSA is the operative anti-retaliation provision for violations of 29 U.S.C. § 207(r), and therefore the Plaintiff consents to dismissal of her claims under 29 U.S.C. § 218c.**

Section 215 of the FLSA has historically been considered the anti-retaliation provision of the FLSA.  However, there has been little uniformity in courts' views and interpretations of the

Act's amendment to the anti-retaliation provisions of the FLSA.   Some Courts have announced that Section 218c of the FLSA *is* the operative anti-retaliation provision of the FLSA.   *See e.g. Wiley v. Asplundh Tree Expert Co.*, 2:13-CV-02952, 2014 WL 1017208 (S.D.W. Va. Mar. 17, 2014)(stating that 218c "prohibits retaliation by an employer against an employee who has assisted or participated in a proceeding concerning a violation of the FLSA"); *Jean-Louis v. Metro. Cable Commc'ns, Inc.*, 838 F. Supp. 2d 111, 120 n. 5 (S.D.N.Y. 2011)(referring to 218c as "[t]he anti-retaliation provision of the FLSA.").

The *Salz* court, on whose decision the Defendants rely in favor of their motion to dismiss Plaintiff's 207(r) claims, concluded that section 215 (not 218c), protects a nursing mother from retaliation for complaints for violations of 207(r).   *Salz v. Casey's Mktg. Co.,* 11-CV-3055-DEO, 2012 WL 2952998 (N.D. Iowa July 19, 2012).

The most well -reasoned decision on the issue was by Judge Wake of the District of Arizona in *Rosenfield v. GlobalTranz Enterprises, Inc.*, CV 11-02327-PHX-NVW, 2012 WL 2572984 (D. Ariz. July 2, 2012).   The logic of the decision is compelling.   Congress could not have meant by enacting 218c to implement redundant anti-retaliation provisions under the FLSA and at the same time leave comprehensive healthcare reform *without* an anti-retaliation provision.   *Id.*   Therefore, section 215 remains the operative anti-retaliation provision for violations of the FLSA (including 207(r)), and 218c protects employees from retaliation for complaints under the Affordable Care Act.

Plaintiff therefore joins in the Defendants' motion to dismiss the Plaintiff's Fifth Cause of Action for retaliation under 29 U.S.C. §218c, but only on the basis that 215 is the operative anti-retaliation provision for violations of 207(r).

On a final note, just as courts have out of necessity struggled with regard to the interpretation of 218c, and have rightfully concluded that 218c cannot logically mean what its plain language suggests, the same is necessary with regard to section 207(r). Because a mother who is deprived of her right to express milk at work will not ordinarily be entitled to minimum wages and overtime, minimum wages and overtime cannot logically be a remedy.

**CONCLUSION**

The Defendants' partial motion to dismiss should only be granted to the extent that Section 218c of the FLSA is not the anti-retaliation provision applicable to violations of 207(r). Plaintiff respectfully requests that the motion be denied in all other respects.

Dated: Glen Cove, New York
   February 2, 2015

           STEVEN J. MOSER, P.C.

     By: Steven J. Moser (SM1133)